Mr, Justice Johnson
 

 delivered the opinion of the Court;
 

 This cause turns upon the construction of a writ
 
 *573
 
 ten instrument, in these words: “ I do request that hereafter any notes that may fall due in the Union Bank, on which I am, or may be endorser, shall not be protested, as I will consider myself bound, in the same manner, as if the said notes had been, or should be legally protested.
 

 (Signed) Thomas Hyde.”
 

 Two. constructions have been contended for: the one, literal,.formal, vernacular; the Other,resting.on the spirit and meaning, as a mercantile and bank transaction.
 

 The former has been sustained in the Court below, and the correctness of that opinion is now to be examined.
 

 The defendant, it appears, became endorser to one Foyles, and the note was discounted in the Union Bank: on its- falling due, it' is admitted that no demand was made on the drawer, or notice given to the endorser.
 

 The case presents the right of the plaintiffs under two aspects: 1st. Upon the just construction of the written instrument. 2d. The practical exposition of it by the defendant himself; and it might also have presented a third : the specific waiver of. demand and notice on the note in suit. By some assumed analogy, or mistaken notions of law, this practice of protesting inland bills, has now become , very generally prevalent; and since the inundation of the country with bank transactions, and the general resort to this mode of exposing the breaches of punctuality which occur upon notes, a solemnity, co
 
 *574
 
 gency, and legal effect, have been given to such protests in public opinion, which certainly has no *. , . .r , , r \ ,,.
 
 e
 
 foundation m the law-merchant. I he nullity ol a protest on the legal obligations of the parties to an inland bill* is tested by the consideration, that independently of statutory provision, (if any exists any where,) or conventional understanding, the protest ou an inland bill is no evidence in a Court of justice of either of the incidents which convert the conditional undertaking of an endorser, into an absolute assumption.
 

 The protest belongs altogether to foreign mercantile transactions, upon which, on the contrary, it is an indispensable incident to making a drawer of a bill, or endorser of a note, liable. On foreign bills, it is the evidence of demand, and an indispensable step towards the legal notice of non-payment, in consequence of which the undertaking of the drawer or endorser becomes absolute. Hence, as to foreign transactions, it is justly predicated of a protestj .that it has a
 
 legal
 
 or
 
 binding
 
 effect.
 

 But the writing under consideration has reference, exclusively, to inland bills, and as to them, the protest has no legal or binding effect. The endorser became liable, only on demand and notice, and of these facts the protest is no evidence. How then shall the waiver of the protest be adjudged a waiver of demand and notice, or in effect convert his conditional into an absolute undertaking ?
 

 Had the defendant omitted one word from his undertaking, it would have been difficult to maintain an affirmative answer to this proposition. But what
 
 *575
 
 are we to understand him;to intend, when he says, “ I will consider myself bound in the same manner
 
 *
 
 as if said notes had been, or should be
 
 legally
 
 protested ?” Except as to foreign bills, a protest has no legal binding effect, and as to them, it is evidence of demand, and incident to legal notice. It either then had this meaning, or.it had none.
 

 This reasonings it may be said, goes no farther than to á waiver of the demand, but what effect is to be given to the word bound ? It must be to pay the debt, or it means nothing. But to cast on the endorser of a foreign bill an obligation to take it up, protest alone is not sufficient; he is still entitled to a reasonable notice in addition to the technical notice communicated by the protest. To bind him to pay the debt, all-these incidents were indispensable, and may, therefore, be well supposed to have been in contemplation of the parties, when entering into this contract.
 

 It is not unworthy of remark, that the writing under consideration asks a boon of the plaintiff, for which it tenders a consideration It requests to be exempted from an expense, exposure, or mortification, on the one hand ; and on the other, what is tendered in return
 
 ?
 
 The,intended object and conceived effect of the protest on the one hand, is to convert his undertaking into an unconditional- assumption, and the' natural, return is to make his undertaking at once absolute, as the effectual means of obtaining the benefit solicited.
 

 If this course of reasoning should not be held conclusive, it would at least be sufficient to prove the
 
 *576
 
 language of the undertaking equivocal; and that the sense in which the parties used the words in which they express themselves, may fairly be sought in the practical, exposition furnished by their own conduct, or the conventional use of language established by their own customs or received opinions.
 

 On this point the evidence proves, that, by the understanding of both parties, this writing did dispense with demand-and refusal, that the company on the one hand, discontinued their practice of putting the notes endorsed by defendant in the usual course for rendering his asumption absolute, and the defendant, on the other, continued up to the last moment to acquiesce in this practice, by renewing his endorsements without ever requiring demand or notice. This was an unequivocal acquiescence in the sense given by the Company to his undertaking, and he cannot be. permitted to lie by, and lull the Company into a state of security, of which he might, at any moment, avail himself, after making the most of the credit thus acquired.
 

 Judgment reversed, and
 
 venire facias de novo
 
 awarded.