GRAVELLE CONST. CO. et al. v. BOARD OF COM'RS OF MAINTENANCE DIST. NO. I, OF BASSETT–WARDELL ROAD IMPROVEMENT DIST. NO. 3 OF MISSISSIPPI COUNTY, ARK., et al.

No. 10313.

Circuit Court of Appeals, Eighth Circuit.

March 9, 1936.

392

E. L. McHaney, Jr., of Little Rock, Ark. (Lowell W. Taylor, of Memphis, Tenn., on the brief), for appellants.

Charles T. Coleman, of Little Rock, Ark. (Walter G. Riddick, of Little Rock, Ark., on the brief), for appellees.

Before STONE, SANBORN, and BOOTH, Circuit Judges.

STONE, Circuit Judge.

This is an action by appellants, a co-partnership, against the district to recover upon a construction contract for grading and graveling a public road. Jury was waived and the trial court made findings of fact and stated conclusions resulting in a judgment for the district. The partners bring this appeal therefrom.

The construction contract which is the subject of this suit required the appellants to do certain grading and graveling of something more than eleven miles of public road for which it was to receive stated sums. There is no dispute that the contract was entered into and the grading work completed in accordance therewith. Also, it is undisputed that plaintiffs were ready and willing to do the graveling and complete the work under the contract, but were prevented from so doing because the district had no money to complete the payment therefor. In this situation the plaintiffs would, of course, be entitled to recover such proper damages as they might prove.

The sole substantial defense involved in this appeal rests upon the contention of the district that it can take legal advantage of a contract between the plaintiffs and a third party (M. W. Elkins & Co.) which provided, in effect, that if the district could

not obtain the money to complete the contract, the plaintiffs would waive damages therefrom.

The contract thus relied upon was made, prior to the construction contract between plaintiffs and Elkins & Co. and is embodied in a letter written by Elkins & Co. to plaintiffs and accepted by them. It is as follows:

"We have entered into a tentative contract to buy the bonds on the above district and we understand you are trying to get the contract to build the roads.

"On account of threatened litigation in this District and other districts of the same nature in Mississippi County, we think there is some chance that these bonds will not be approved by the regular approving attorneys, on whose approving opinion we have bought similar bonds in Mississippi County. Should we fail to get the approving opinion of our regular approving attorneys or should the litigation about this and other districts materialize, it will make it very hard to sell these bonds. We are willing to have our Mr. T. J. Raney assist you in getting the contract and we are willing to try to sell the bonds with the understanding from you that in the event you get the contract, if we are able to sell part of the bonds and cannot sell all of them, you are to do such work as can be paid for out of the proceeds of the bonds we actually sell; and should we not be able to sell any part of the bonds you are to cancel your contract with the District to build the remainder of said road and are not to make any claim for damages on account of the cancellation of said contract against us or against the Maintenance District #1 of Bassett-Wardell Road Improvement District #3 of Mississippi County, or the Commissioners thereof."

The contention of the district was and is that this contract was made for its benefit and therefore furnishes a complete defense to action upon the construction contract. The trial court found that the district knew of this contract between the plaintiffs and Elkins & Co., and, acting thereon, awarded the work to plaintiffs and entered into the construction contract. In our opinion, this finding of the court is not supported by any evidence in the record. The only evidence which even bears upon such knowledge upon the part of the district is from the testimony given by Sullenger, secretary of the Board of Commissioners of the District, who testified, on

pages 37 and 40 of the record, respectively, as follows:

"I said to Raney and DeCamp[1]: 'I don't think we can sell these bonds; I don't think we should enter into this contract for this work.' Raney and DeCamp both said: 'We will fix that so there will be no liability upon the district.'"

"The advertisement then went out for bids. It was an open letting. There was nothing in the advertisement at all which said that only part of the work would be done and that the balance would be done when and if sufficient bonds were sold. The bids were not received on any such written basis. There was nothing in the written basis on which the bids were received about partial performance. There was not one word in the notice or in the bids or in the contract about it, but we discussed it there with the bidders, or the prospective bidders."

We think this evidence does not approach establishing that the district had any knowledge whatsoever of the existence or terms of the Elkins contract when it entered into the construction contract with plaintiffs.

The above conclusion as to knowledge of and action by the district in reliance upon the Elkins contract completely removes any question of estoppel. It leaves the issue purely as to whether the Elkins contract was, in a legal sense, made for the benefit of the district so that it can enforce the provisions thereof against the plaintiffs.

■■ Whether a contract is of a character that it can be taken advantage of by a third person not a party thereto must be ruled by the local law of Arkansas. Federal Surety Co. v. Minneapolis Steel & Machinery Co., 17 F.(2d) 242, 245 (C.C.A. 8); M. E. Smith & Co. v. Wilson, 9 F.(2d) 51, 52 (C.C.A.8). The Arkansas decisions seem to follow the general rule that it is not sufficient that a third party might be benefited by a contract to which it is not a party, but that it must be shown that the motive or purpose of such contract was to benefit the third party—in short, that the contract was really entered into for the benefit of such third party. Schmidt v. Griffith, 144 Ark. 8, 221 S.W. 476; Georgia State Savings Ass'n v. Dearing, 128 Ark. 149, 193 S.W. 512; Dickinson v. McCoppin, 121 Ark. 414, 181 S.W. 151; Thomas Mfg. Co. v. Prather, 65 Ark. 27, 44 S.W. 218; Johnson v. Bamberger (Ark.) 19 S.W. 920. Appellees cite two cases which they regard as contrary. The first of these (Bloom v. Home Insurance Agency, 91 Ark. 367, 121 S.W. 293) involved no question of this sort and the other (Spear Mining Co. v. Shinn, 93 Ark. 346, 124 S.W. 1045) is not opposed. Also, see, Second National Bank v. Grand Lodge, 98 U.S. 123, 124, 25 L.Ed. 75, and Federal Surety Co. v. Minneapolis Steel & Machinery Co., 17 F.(2d) 242, 243 (C.C.A.8) for statement of the doctrine in general.

■ Applying the above rule of law to this contract, it seems very clear that the Elkins contract was not made for the benefit of the district. The sole motive and purpose therein, so far as Elkins & Co. was concerned, was to protect itself from liability for failure to provide the district with funds through sales of the district bonds under its contract with the district. Such liability might arise to the construction contractor or to the district, and it was solely for its own protection against these two possible liabilities that Elkins & Co. made this contract. While the contract would have resulted in a benefit to the district yet that benefit was purely incidental and was not the purpose or the motive active in the Elkins contract. We think this defense of the district entirely fails on the proof.

■ There is an incidental, matter which was touched upon in argument and which may or may not arise in any retrial of this case. It appeared from the evidence that $19,000 of the bonds had been sold and that a materially smaller amount of money had been paid to the contractor or yet remained in the hands of the district. Appellants argued that even if the Elkins contract were available as a defense to its action, yet the contractor should have been permitted to do work and to have been paid up to the amount of the bonds sold, since there was no showing as to what had become of the balance of these funds. We think this position is not tenable on the record here which reveals an attempt on the part of the district to show what became of this difference in funds and which proof was prevented by objection on the part of appellants.

The judgment should be reversed, and the case remanded for new trial.

---

[1] Raney was the active representative of Elkins & Co. De Camp was the agent of plaintiffs.